**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

<table>
<tr><td>Emily Becker, Calli Forsberg, Morgan<br>Stenseth, and Maya Tellman,</td><td>)<br>)</td><td rowspan="2">**ORDER GRANTING MOTION TO<br>DISMISS**</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="text-align:right">Plaintiffs,</td><td>)<br>)</td><td></td></tr>
<tr><td style="text-align:center">vs.</td><td>)<br>)</td><td>Case No. 3:22-cv-100</td></tr>
<tr><td>The North Dakota University System,</td><td>)<br>)</td><td></td></tr>
<tr><td style="text-align:right">Defendant.</td><td>)</td><td></td></tr>
</table>

Before the Court is Defendant North Dakota University System's ("NDUS") motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 21. Plaintiffs Emily Becker, Calli Forsberg, Morgan Stenseth, and Maya Tellman (together, the "Plaintiffs") oppose the motion. Doc. No. 22. For the reasons below, and because the Plaintiffs lack Article III standing to pursue their claim, the motion is granted.

I.      **BACKGROUND**

At the center of this dispute is the elimination of the University of North Dakota's ("UND") intercollegiate women's ice hockey program in 2017.[1] Doc. No. 1. The Plaintiffs are four women, who describe themselves (at least in part) as "would-be members" of UND's women's hockey program. They allege an effective accommodation claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., ("Title IX") against NDUS as a result of the elimination of the women's ice hockey program. Id.

---

[1] And to date, the women's ice hockey program has not been reinstated. Doc. No. 1 ¶ 1.

NDUS "is a state public entity that owns and operates [UND][.]" Id. ¶ 11. Because NDUS receives federal funding, "all of [NDUS's] its programs and activities, including its intercollegiate athletics program," are subject to Title IX. Id. ¶ 12. This includes the intercollegiate athletic programs at UND and its women's ice hockey program.

As to the four Plaintiffs, the complaint contains the following factual allegations as to each:

7. Plaintiff EMILY BECKER, a native of Grand Forks, North Dakota, is 19 years old, a 2022 graduate of Red River High School in Grand Forks, and a skilled and experienced ice hockeyplayer. Ms. Becker has played ice hockey since she was a young child and played on her high school ice hockey team for four years. Ms. Becker would enroll at the University of North Dakota and play on its women's ice hockey team if UND offered that opportunity. Ms. Becker has four remaining years of eligibility to play intercollegiate athletics under the rules and regulations of the National Collegiate Athletic Association ("NCAA").

8. Plaintiff CALLI FORSBERG is 20 years old and a resident of Devils Lake, North Dakota. She is a skilled ice hockey player and was recruited from high school to play on the University of North Dakota's women's intercollegiate ice hockey team in 2016. After the University eliminated the woman's ice hockey team at the conclusion of the 2016-17 season, Ms. Forsberg decided to attend Bermidji [sic] State University in Minnesota. She would have remained at UND if the ice hockey program had not been eliminated and would return to UND if the program is reinstated. Ms. Forsberg has three remaining years of eligibility to play intercollegiate athletics under the rules and regulations of the National Collegiate Athletic Association ("NCAA").

9. Plaintiff MORGAN STENSETH, a resident of ,Grand Forks, North Dakota, is 19 years old and a 2021 graduate of Red River High School in Grand Forks. She is an experienced and skilled ice hockey player, having played competitively since she was nine years old and throughout high school and on club teams. She was accepted at the University of North Dakota and attended [sic]

10. Plaintiff MAYA TELLMANN, a resident of Grand Forks, North Dakota, is 18 years old and a 2021 graduate of Red River High School in Grand Forks. She is an experienced and skilled ice hockey player, having played since she was in kindergarten. Ms. Telman has played competitive ice hockey at the high school and club levels and was a member of two state championship teams. She was accepted as a student at UND, continues to play ice hockey, and would attend UND and play on its women's ice hockey team if the program were to be reinstated. Ms. Tellman has four remaining years of eligibility to play intercollegiate athletics under the rules and regulations of the National Collegiate Athletic Association ("NCAA").

Id. ¶¶ 7-10.  Additionally, Emily Becker and Calli Forsberg have never applied to UND, Maya Tellman applied to UND in 2021 but never enrolled, and Morgan Stenseth applied to and attended UND for two months in the fall of 2021 until she withdrew in October 2021.  See Doc. No. 21-1.[2]

The Plaintiffs filed their complaint against NDUS on June 16, 2022.  Doc. No. 1.  They bring their claims on behalf of themselves and a putative class "of all current, prospective, and future female students who are harmed by and want to end [NDUS's] sex discrimination and violation of Title IX . . ." and "on behalf of women who wish to participate in varsity women's ice hockey at [UND], or who want to participate in varsity sports eliminated or not offered [UND]."  Id. ¶¶ 26-27.  They allege a Title IX effective accommodation claim and seek declaratory and injunctive relief.  Id. ¶¶ 36-41.  NDUS moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting the Plaintiffs lack standing because they are not students at UND, and that the complaint fails to state a claim upon which relief may be granted.  Doc. No. 21.

## II.  LAW AND ANALYSIS

Turning first to the standing and subject matter jurisdiction challenge, NDUS argues the Plaintiffs lack Article III standing to bring their claims in federal court.  More specifically, NDUS posits that only current UND students have standing to bring a Title IX claim, and because none of the Plaintiffs are current students at UND, they do not have standing.  The Plaintiffs, for their

---

[2] In the Court's view, the Declaration of Scott Correll, the University Registrar for UND, is a document embraced by the pleadings.  See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1150-51 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.").

part, disagree, asserting that "would-be students" have standing to bring Title IX claims against universities they do not attend.

A federal court "must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments" in each case. Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006). "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (quoting United States v. Morton, 467 U.S. 822, 828 (1984)).  Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction over a claim.  Because the facts are essentially undisputed and the challenge is based on the complaint, the motion is a facial attack on jurisdiction. Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 (8th Cir. 2003).

To invoke subject matter jurisdiction in federal court, a plaintiff must have Article III standing. See Disability Support All. v. Heartwood Enterprises, LLC, 885 F.3d 543, 545 (8th Cir. 2018); Wolfe v. Gilmour Mfg. Co., 143 F.3d 1122, 1126 (8th Cir. 1998). "To establish Article III standing, plaintiffs must show (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury." Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021). An injury in fact is "the actual or imminent invasion of a concrete and particularized legal interest." Kuehl v. Sellner, 887 F.3d 845, 850 (8th Cir. 2018) (citations omitted).

As to injury-in-fact, a plaintiff must show "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical." Sierra Club v. Robertson, 28 F.3d 753, 758 (8th Cir. 1994). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, 578 U.S. 330,

4

339 (2016), as revised (May 24, 2016) (internal citation and quotation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." Id. at 340.

As to the requirement that the injury be "actual or imminent," the Supreme Court has opined that "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be" are insufficient. Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992). As such, "[a]ssertions of potential future injury do not satisfy the injury-in-fact test." Id. (emphasis added). A future injury can be sufficient to establish standing, however, if a plaintiff demonstrates "'the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur.'" Alleruzzo v SuperValu, Inc. (In re SuperValu, Inc.), 870 F.3d 763, 769 (8th Cir. 2017) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014)) (cleaned up). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan, 504 U.S. at 561.

If a plaintiff lacks Article III standing, a federal court has no subject-matter jurisdiction over the claim and the action must be dismissed. Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1128 (8th Cir. 2016). And "[t]he requirements for standing do not change in the class action context." In re SuperValu, Inc., 870 F.3d at 768 (citing Spokeo, 136 S. Ct. at 1547 n.6). "A putative class action can proceed as long as one named plaintiff has standing." Id. (first citing Horne v. Flores, 557 U.S. 433, 446, (2009); then citing Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 & n.9 (1977)).

"Because this case is at the pleading stage, plaintiffs 'must "clearly allege facts" demonstrating' the elements of standing." Id. (quoting Spokeo, 136 S. Ct. at 1547); see also Sch. of the Ozarks, Inc. v. Biden, 41 F.4th 992, 997 (8th Cir. 2022) ("At the pleading stage, therefore,

a plaintiff must 'allege sufficient facts to support a reasonable inference that [it] can satisfy the elements of standing.'" (quoting Animal Legal Def. Fund, 8 F.4th at 718).

Turning to the substantive question of standing, the real question raised through both parties' filings is when, if ever, do "future" students, or "would-be" students, or former students have standing to bring a Title IX claim against a university they do not attend?  NDUS's answer is essentially, "Never," while the Plaintiffs' answer is essentially, "Always."  As is often the case, after a careful review of the limited federal case law that addresses this question, the answer appears to fall somewhere in between.

In Pederson v. Louisiana State University, 213 F.3d 858 (5th Cir. 2000), the Fifth Circuit Court of Appeals took on the question of "delineating the precise level of injury a litigant must demonstrate to establish standing to assert a claim under Title IX for ineffective accommodation." Id. at 870.  There, three female undergraduate students (referred to as the Pederson Plaintiffs) brought a Title IX effective accommodation claim, among others, against LSU after LSU failed to field a women's varsity soccer team.  Id.  at 864. The district court determined the Pederson Plaintiffs lacked standing to assert the Title IX claim because each plaintiff lacked National Collegiate Athletic Association ("NCAA") eligibility and that no plaintiff had the ability to secure a position on the women's varsity soccer team. Id. at 870. The Fifth Circuit, however, noted these were the wrong inquires to decide the question of standing.  Instead, the Fifth Circuit drew from analogy to the United States Supreme Court's Equal Protection jurisprudence, citing Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida, 508 U.S. 656, 666 (1993), "[A] group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing.  The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition

of the barrier, not the ultimate inability to obtain the benefit." Id. at 871.  The Fifth Circuit went on to hold "that to establish standing under a Title IX effective accommodation claim, a party need only demonstrate that she is 'ready and able' to compete for a position on the unfielded team."  Id.

The "ready and able" standard from Pederson is instructive and helpful in assessing standing here, but it is not the end of the inquiry because it rests on an assumption that a current student be "ready and able" to compete.  And recall that the Pederson Plaintiffs were three undergraduate students currently enrolled at LSU.  So, since Pederson, some federal courts (though mostly in the context of defining classes for class action cases) have grappled with whether "future," "prospective," "would-be," "deterred," and/or "former" students also have standing to bring an effective accommodation claim.

Anders v. California State University, Fresno, reviews this line of case law quite well, though it is apparent the lines between "future," and "prospective," and "deterred" students are quite fine and poorly defined. No. 121CV00179AWIBAM, 2022 WL 3371600, *3-4 (E.D. Cal. Aug. 16, 2022), reconsideration denied, No. 1:21-CV-179-AWI-BAM, 2022 WL 17156145 (E.D. Cal. Nov. 22, 2022). As noted in Anders, and consistent with Pederson, enrolled students (who alleged the ready and able standard) at a certain college or university typically have standing to pursue Title IX claims.  On the other hand, as to "deterred" students, or students who were deterred from enrolling at a certain college or university and did not enroll because of the alleged sex discrimination in athletics, standing is unlikely and has been viewed as rather questionable.  Id. at *4 (citing Biediger v. Quinnipiac Univ., No. 3:09CV621SRU, 2010 WL 2017773, at *5 (D. Conn. May 20, 2010)). Closer yet is the category of "future" students,[3] which seems to be viewed as

---

[3] Again, the various categories of students are, at best, poorly defined in the case law, especially given the college and university admission processes.

students that will be enrolling at a certain college or university but have not yet enrolled.  See id. (citing Portz v. St. Cloud State Univ., 297 F. Supp. 3d 929, 942-43 (D. Minn. 2018)).  And finally, there is the category of "former" students, where the Eighth Circuit Court of Appeals has held, "That a plaintiff lacks eligibility or is no longer a student is an adequate basis to dismiss an individual Title IX claim for injunctive relief," see Grandson, 272 F.3d at 574, and other federal courts have suggested that, for standing as to injunctive relief, a former student must "demonstrate some likelihood of return."  See Doe 1 v. Baylor Univ., No. 6:16-CV-173-RP, 2020 WL 1557742, at *5 (W.D. Tex. Apr. 1, 2020).

With these concepts and standards in mind, the Court returns to the specific factual allegations in this complaint as to each Plaintiff.  First, as to Emily Becker and Calli Forsberg, both allege they are North Dakota residents and play ice hockey. Doc. No. 1 ¶¶ 7-8.  They also conditionally allege they "would" enroll at UND "if" UND offered a women's ice hockey program. Id.  And as to Forsberg specifically, she alleges she "decided to attend Bermidji [sic] State University in Minnesota."  Id.  Neither Becker nor Forsberg allege they enrolled at UND or would be enrolling at UND in the future.  Indeed, it appears neither ever applied to attend UND.

The allegations as to Becker and Forsberg are insufficient to demonstrate Article III standing for a Title IX claim given the case law noted above.  Becker's and Fosberg's allegations are precisely the type of allegations that were questioned by the federal district court in Quinnipiac. Quinnipiac Univ., 2010 WL 2017773, at *5. There, the district court specifically questioned "whether people who have not enrolled and have no plans of enrolling at Quinnipiac have standing to bring this Title IX claim."  Id.  It went on to note that "it seems questionable that a person who has merely been deterred from enrolling in a school has suffered an injury that Title IX can redress."  Id.  Moreover, the district court concluded it would not certify a certain subclass of the

8

class action that contained women "who did not, or will not, enroll at Quinnipiac because of the University's gender disparity in athletic opportunities and benefits." <u>Id.</u> at *4. Yet these are precisely the allegations Becker and Forsberg raise—that they did not attend UND because of the elimination of gender disparity in athletic opportunities at UND.  Notably, Becker and Forsberg are not currently enrolled at UND, have alleged no plans of enrolling at UND, and have never applied to attend UND.  It follows then that neither has alleged any injury in fact beyond a purely hypothetical injury.  As a result, Becker and Forsberg have not clearly alleged facts demonstrating the elements of standing.

Maya Tellman fairs no better.  Doc. No. 1 ¶ 10.  Unlike Becker and Forsberg, Tellman did apply to UND in 2021 and was accepted, but ultimately never enrolled.  Doc. No. 21-1.  Like Becker and Forsberg, she is a North Dakota resident who plays ice hockey.  Doc. No. 1 ¶ 10.  Once again, Tellman is not currently enrolled at UND, and while she did apply to UND and was accepted, she chose not to enroll and does not allege any future plan or intent to enroll at UND. So, like Becker and Forsberg, Tellman has not alleged any injury in fact beyond a purely hypothetical injury and she has not clearly alleged facts demonstrating the elements of standing.

The final Plaintiff is Morgan Stenseth, whose allegations (at least at first blush) present a somewhat closer call.  Stenseth is, like the other Plaintiffs, a North Dakota resident who plays ice hockey.  <u>Id.</u> ¶ 9.  However, she is the only Plaintiff that applied to UND, was accepted, and did attend UND until October 2021 when she withdrew and stopped attending.  Doc. No. 21-1.  These facts place Stenseth in the category of a "former" student.  Recall though the Eighth Circuit's decision in <u>Grandson</u>, 272 F.3d at 574 ("that a plaintiff is no longer a student is an adequate basis to dismiss an individual Title IX claim"), and the refinement as to former students from <u>Doe 1</u>, 2020 WL 1557742, at *5 (that a former student may be able to demonstrate Title IX standing if

the former student "demonstrates some likelihood of return."). Here, Stenseth's allegations fail under both cases because she is no longer a student at UND, and she has not alleged any likelihood of return. Beyond that, on its face, the complaint is fatal to her claim because the paragraph alleging facts as to her is incomplete and cuts off at the end of page three. Doc. No. 1 ¶ 9. Accordingly, like the other Plaintiffs, Stenseth has not clearly alleged facts demonstrating the elements of standing.

For each Plaintiff, the alleged injury is "'conjectural or hypothetical' and is therefore insufficient to confer standing." Frost v. Sioux City, Iowa, 920 F.3d 1158, 1161 (8th Cir. 2019) (quoting City of L.A. v. Lyons, 461 U.S. 95 (1983)); see also Grandson, 272 F.3d at 574. Put simply, the Plaintiffs failed to allege sufficient facts to support a reasonable inference that at least one of them can satisfy the injury-in-fact element of Article III standing. Sch. of the Ozarks, Inc., 41 F.4th at 997.

## III.   CONCLUSION

As alleged, the Plaintiffs do not have Article III standing to pursue their Title IX claim against NDUS. Without Article III standing satisfied, the Court does not have subject matter jurisdiction over the case. Accordingly, NDUS's motion to dismiss for lack of jurisdiction (Doc. No. 21) is **GRANTED**, and the Plaintiffs' complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**. As a result, the Court **FINDS AS MOOT** NDUS's motion to dismiss for failure to state a claim (Doc. No. 21).

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 9th day of January, 2023.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge

10

United States District Court